MICHELE BECKWITH
Acting United States Attorney
DAVID L. GAPPA
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 1:20-CR-00025 JLT |
|---|---|
| Plaintiff, | GOVERNMENT SENTENCING MEMORANDUM |
| v. | DATE: March 10, 2025 |
| DANIEL VINCENT SALAZAR JR., | TIME: 9:00 a.m. |
| Defendant. | COURT: Hon. Jennifer L. Thurston |

**I.     INTRODUCTION**

The defendant pleaded guilty on September 16, 2024, to five counts of Sexual Exploitation of a Minor and Attempt in violation of 18 U.S.C. §§ 2251(a) and (e).  The court has scheduled a sentencing hearing for March 10, 2025.  The United States Probation Office has submitted a revised presentence investigation report (PSR), dated January 21, 2025, that discusses some of the offense conduct, parts of the defendant's personal history, and the ranges for sentencing under the United States Sentencing Commission's Sentencing Guidelines (USSG).  The report recommends a total term of imprisonment of 720 months and a 300-month term of supervised release.  It also recommends that no fine be imposed but that the defendant be ordered to pay mandatory special assessments totaling $500.  The report also recommends that the court not impose the mandatory $5,000 special assessment required under the Justice for Victims of Trafficking Act (JVTA) or the $50,000 assessment under the Amy, Vicky, and

Andy Child Pornography Victim Assistance Act (AVAA) of 2018.[1] The defendant did not file any formal objections to the PSR. The government urges the court to impose a custodial sentence of 540 months (45 years) followed by a lifetime term of supervised release and relevant mandatory financial assessments.

## II. THE DEFENDANT'S OFFENSE CONDUCT WAS EXTREMELY SERIOUS

The defendant engaged in an egregious pattern of sexual exploitation of young girls through the internet and social media applications, and years later his victims are still reverberating from the trauma and damage that he inflicted on them. The PSR outlines some of the offense conduct and supplements the factual basis for each of the five counts to which the defendant has pleaded guilty. The record also contains a lengthy affidavit in support of a criminal complaint that provides even more details about how the defendant committed his offenses with such little regard for their well-being. Docket Item 1. Even though local law enforcement investigators were able to locate and identify five victims that are referenced in the indictment and plea agreement, the defendant victimized other young girls, some of whom could not be identified.

## III. CONGRESSIONAL CONCERN ABOUT THOSE WHO SEXUALLY EXPLOIT CHILDREN REMAINS STRONG AND JUSTIFIES THE TERM OF IMPRISONMENT RECOMMENDED BY THE PROBATION OFFICE AND THE GOVERNMENT.

Numerous statutory and Sentencing Guidelines amendments have strengthened the mandatory and recommended penalties for federal offenses related to the sexual exploitation of minors, and they are consistent with the sentencing recommendations by the probation office and the government. The defendant is in the general population of sexual offenders that has been deemed worthy of significant federal punishments and close supervision upon release from custody. The continued focus on people, such as the defendant, who use the internet to sexually exploit children demonstrates that Congress has made this area a legislative priority, and it has attempted to ensure effective prosecution and punishment of offenders. Legislative activity in this area is consistent with a Congressional attempt to "restore the government's ability to prosecute child [exploitation] offenses successfully," by "ensuring that the

---

[1] The PSR references $35,000, but that amount applies to trafficking in child pornography. 18 U.S.C. § 2259A(a)(2).

GOVERNMENT SENTENCING MEMORANDUM        2

criminal prohibitions . . . remain enforceable and effective," *United States v. MacEwan*, 445 F.3d 249 n.12 (3rd Cir. 2006). This need is even more critical as technology and offenders become more sophisticated and the number of potential victims becomes larger while their ages become lower.

### IV. RELEVANT SENTENCING FACTORS AND GOVERNMENT RECOMMENDATION

The considerations at 18 U.S.C. § 3553(a)(1) through (6) justify a sentence that includes a term of imprisonment of 540 months followed by a lifetime term of supervised release.

#### A. 3553(a)(1) – The nature and circumstances of the offense and the history and characteristics of the defendant.

The defendant is 29 years old, and he committed the offenses for which he is being sentenced when he was 22-23 years of age. He reported to the probation office that his upbringing was "unstable," but he had a loving mother and siblings. Fortunately, he has stated that he did not suffer any abuse, neglect, drug abuse, or domestic violence while being raised as a child. Although he might point to some personal challenges in his earlier life, he has offered no objective evidence that any events in his past caused him to commit crimes related to the sexual exploitation of children. But even if someone is exposed to traumatic events in early years, that person usually does not go on to commit crimes, especially not crimes against children. Thus, any personal challenges that the defendant overcame before becoming an adult should not mitigate the appropriately harsh sentence he earned while committing a serious of extremely serious crimes as an adult.

Although his sexual exploitation of each minor victim was very serious, some aspects of his interactions with each victim were particularly heinous. Only some examples are summarized here. The defendant convinced CV2 to send him sexually explicit images of herself, and when she refused to provide additional similar material, the defendant threatened to send sexually explicit images of her to students at the middle school that CV2 attended. CV2 responded by stating, "Oh dont worry- I won't be alive". This statement is obvious confirmation of how much distress he caused for that vulnerable victim. This was similar to the callous interactions the defendant had with CV5. On April 17, 2019, the defendant (using Instagram screenname DD371771) stated, "I heard you in the video when you put the finger in ur ass you said ow" . . . "Haha that's hot. I can tell that finger went deep just looking at it" and "Tell me what was going thru you head when that finger went in". CV5 responded by stating, "I wanted

GOVERNMENT SENTENCING MEMORANDUM     3

to kill myself". CV5 expressed other suicidal thoughts during the chats but the defendant showed little remorse and made comments such as, "That's on you. Not my fault" and "Turn the camera around last time I'm asking. The cops can't do nothing trust me". Docket Item 1 at 6, 8-9. Any statements of remorse or contrition after his arrest or at sentencing cannot overcome his pattern of extremely destructive conduct and statements to victims when he had unfettered control over his decisions.

A prison term of 540 months with sex offender treatment that continues during a term of supervision will not eliminate the defendant's dangerous sexual interest in children, but it should provide him with sufficient insights and techniques to help reduce the risk that he will continue to present to the public, particularly children. A lifetime term of supervised release is warranted so that he participates in sex offender treatment, is obligated to register as a sex offender, and also participates in any other treatment that his supervising probation officer might recommend as beneficial. His access to minors, computers, and the internet also should be restricted and subject to the supervision of a probation officer during this time. As the court knows, should the defendant perform well on supervision, he can move the court to terminate early that aspect of his sentence. Alternatively, should the defendant violate terms of his supervision, the court could reimpose a lifetime term, upon sentencing for a revocation of supervised release.

**B. 3553(a)(2) – The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with necessary educational training, medical care, or other correctional treatment.**

These sentencing factors weigh in favor of a sentence that includes a prison term of 540 months followed by a lifetime term of supervised release. The defendant would benefit from participating in a lengthy program of sex offender counseling and treatment, and this would best be done within the confines of a BOP facility. Each BOP institution has counseling resources available, and each region also has at least one designated sex offender management and treatment program. There is also at least one residential treatment program available for inmates who are concluding their custodial sentences. Imposing the prison term recommended by the government would provide the defendant with just punishment, afford adequate deterrence to him and others, protect the public from his recent and repeatedly demonstrated sexual interest in children, and provide the defendant with necessary

GOVERNMENT SENTENCING MEMORANDUM   4

educational training, medical care, or other correctional treatment. This is especially important in a case like this because the defendant brazenly told CV5, as he demanded that she create additional images of herself engaged in sexually explicit conduct: "The cops can't do nothing trust me." He could also take advantage of BOP resources that could address any problems connected to abuse of substances such as drugs or alcohol.

### C. 3553(a)(3) and (4) – The kind of sentences available and the sentencing ranges established.

These factors also weigh in favor of the sentence recommended by the government, because the ranges for sentencing include a mandatory minimum prison term of 15 years with a maximum term of 150 years. The sentence under the USSG is life. Probation is expressly precluded by statute under 18 U.S.C. §§ 2422(b), 3561(a)(2). The prison term recommended by the government is below the maximum term that the court could impose, but it would incapacitate the defendant until he reaches an age at which his risk to the public, assuming he successfully participates in treatment, is diminished significantly.

### D. 3553(a)(5) – Any pertinent policy statements by the Sentencing Commission.

Although many defendants and some courts have criticized the punishments for federal child sexual exploitation offenses, Congress has not relented in legislating in this area. Congress enacted the Justice for Victims of Trafficking Act of 2015, Pub. L 144-22, May 29, 2015. Notably, too, although the Sentencing Commission made some adjustments to provisions of USSG § 2G2.2 effective November 1, 2016, most of the provisions were not changed. And on December 7, 2018, Congress enacted the Amy, Vicky, and Andy Child Pornography Victim Assistance Act (AVAA) designed to facilitate compensation for victims such as the victims in this case. Moreover, although it is only advisory, Application Note 4 to USSG 5K2.0 indicates that downward departures in "child crimes and sexual offenses," including the offenses for which the defendant will be sentenced, are strongly discouraged. This only underscores that Congress and the Sentencing Commission generally believe that the range for sentencing in a case such as before the court is not unduly harsh. So these factors weigh in favor of the sentence recommended by the government.

///

**E. The need to avoid unwarranted sentencing disparities.**

Many defendants sentenced in the Fresno division of the Eastern District of California have received sentences similar to the government's recommendations in this case for conduct similar to that engaged in by this defendant. It is always difficult to compare outcomes of sentencings in different cases, because the sentence in each case is dependent on its own facts and the considerations unique to a defendant, but the following are just a few examples:

Nikko Perez  cr-18-211
- Multiple victims exploited through SnapChat and LiveMe
- Confessed when a search warrant was executed and *pleaded guilty without filing any motions and agreed to full appellate waivers within six months of case filing*
- Sentenced to 40 years imprisonment at age 27

Matthew Sheffield cr-19-180
- Two victims
- Pleaded guilty with full appellate waivers
- Sentenced to statutory maximum of 60 years imprisonment at age at age 41

Andrew Sarnowski cr-20-169
- Pleaded guilty to one count of sexual exploitation and one count of receipt or distribution of child sexual abuse material
- One victim
- Sentenced to 40 years imprisonment at age 25

Anthony Rodriquez cr-20-236
- One victim
- Pleaded guilty to one count of sexual exploitation and one count of distribution of child sexual abuse material
- Sentenced to 45 years imprisonment at age 34

Jacob Blanco cr-17-140
- Multiple victims
- Pleaded guilty to five exploitation charges and one distribution charge
- Sentenced to 55 years imprisonment at age at age 29 but preserved his right to appeal a motion to suppress evidence (convictions and sentence upheld by Ninth Circuit)

Matthew Goyder cr-20-212
- Multiple victims contacted through SnapChat
- Pleaded guilty
- Sentenced to 40 years imprisonment at age 41

The defendant's conduct in this case justifies the court in imposing the sentence recommended by the government.

### F. Victim Impact and Restitution

The PSR includes impact statements from two victims and a parent of a victim. The government also previously shared with the court and counsel statements from a victim and parents prior to the detention hearings in this case. The government has been in communication with the identified victims and families throughout the prosecution of this case. One victim eloquently has written that "[t]here is no word to describe the disgusting things you did. I have the privilege to stand up here and say that I was the one you would not break, so I will forever the defend the ones that you did. In your own words I was going to end up being a crackhead in a couple years, doing sexual favors for 20 dollars. Which is the only thing you ever said to me that I felt comfortable repeating today." Docket Item 81-2 (PSR) at 1 of 6.

A different victim has written that beginning at age 12, when the defendant victimized her, she has felt "scared of the world and everything that is in it." She has written that the defendant "took away my innocence, my confidence and many other things. Not one day has gone by where I don't think about what he did to me. My life will never truly be the same after these horrific events. I will forever walk around in fear." She has also written that [b]etween the bullying and the stress of the case I fell into a bad mental state, to the point that I thought about taking my own life." Docket Item 81-2 (PSR) at 5 of 6.

That victim's mother has written that her daughter became a "shell of herself" after the defendant acquired and distributed to people at her school sexually explicit images of her. The mother has reported that the defendant "took her spirit, her childhood, her innocence, and her smile. It's been 6 years and she still has emotional scars. I'm sure she will for the rest of her life." Docket Item 81-2 (PSR) at 3 of 6.

In addition to the written statements already before the court, as noted in the PSR (at paragraph 23) it is possible that two victims and two parents of victims might wish to address the court at sentencing.

### G. Financial Assessments

The probation office has recommended that the court not impose a fine or any other financial

assessment other than the five mandatory $100 special assessments. But the court should impose the $5,000 assessment under the JVTA, because the defendant is not indigent for that purpose. Under the JVTA, a court must impose a $5,000 special assessment per count for any "non-indigent person" convicted of a crime listed in Chapter 110. 18 U.S.C. § 3014(a). A determination of indigency for appointment of counsel does not control whether a defendant is indigent for the purpose of imposing a mandatory JVTA assessment. The circuits that have considered this issue have rejected the same argument. *See, e.g.*, *United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017). In *Kelley*, the Eighth Circuit rejected the defendant's argument that the standard for indigence under the JVTA is the same as the standard of indigence for appointment of counsel or proceeding in forma pauperis. *Id.* at 800–01. The court noted that the standard for in forma pauperis is—and should be—lower than for indigence in post-judgment fines, because if a defendant cannot afford an attorney, he cannot be assured a fair trial. *Id.* But for post-judgment fines, like the $5,000 JVTA special assessment, the court found more apt the comparison of sentencing phase standards for indigence, which allow a court to consider a defendant's future earning ability. *Id.* at 801. In the USSG, for instance, a defendant bears the burden to prove that he cannot afford to pay a fine at the time of sentencing and that he is "not likely to become able to pay a fine upon his release from his term of imprisonment." *Id.*

Likewise, under the Victim and Witness Protection Act courts may consider a defendant's future earning ability in deciding how much restitution to order. *Id.* The reason courts look not only to a defendant's current assets, but also future earning potential when imposing a fine is because a defendant will have a chance in the future to pay the fine once the defendant is released from prison, so limiting the inquiry to the assets at the time of sentencing does not make sense. *United States v. Shepherd*, 922 F.3d 753, 758 (6th Cir. 2019); *see also United States v. Norton*, 48 F.4th 124 (3rd Cir. 2022) (no error in district court imposing JVTA assessment on defendant who qualified for appointed counsel who was sentenced to 168-month term of imprisonment and 240-month term of supervised release for child exploitation offense). Even if the defendant does not currently have assets[2] he will have an opportunity to earn wages while serving his sentence within BOP. Having a portion of those earnings go toward

---

[2] The government has repeatedly requested that the defendant disclose his financial resources, but the defendant still has not provided the requested information.

compensating victims will serve the interests of justice by providing resources to those victims while also reminding the defendant why he is being confined. He will also have the ability to work after he is released from custody if the court follows the government's sentencing recommendations.

On December 7, 2018, Congress enacted the Amy, Vicky, and Andy Child Pornography Victim Assistance Act (AVAA). The Act instructs that, in addition to any restitution or other special assessment, courts "shall assess not more than $50,000 on any person convicted of . . . [an] offense" involving sexual exploitation of a minor (by producing child pornography). 18 U.S.C. § 2259A(a)(3). Assessments collected under this statute are deposited in the Child Pornography Victims Reserve, which provides monetary assistance to victims of trafficking in child pornography, *see* 18 U.S.C. §§ 2259(d), 2259B, and shall be paid in full after any special assessment under 18 U.S.C. § 3013 and any restitution to victims of the defendant's offense, *see* 18 U.S.C. § 2259A(d)(2). In determining the amount to be assessed under 18 U.S.C. § 2259A, courts should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and the guidance in 18 U.S.C. § 3572 for the imposition of fines. *See* 18 U.S.C. § 2259A(c). Thus, the United States respectfully requests that the Court impose a $50,000 special assessment under 18 U.S.C. § 2259A(a)(3).

## V. CONCLUSION

The court should impose a term of imprisonment of 540 months followed by a lifetime term of supervised release that includes the standard and special conditions proposed in the revised PSR. The court should also impose the five mandatory $100 penalty assessments and the JVTA assessment of $5,000 as well as a $50,000 special assessment under 18 U.S.C. § 2259A(a)(3).

Dated: March 5, 2025

MICHELE BECKWITH
Acting United States Attorney

By: /s/ DAVID L. GAPPA
DAVID L. GAPPA
Assistant United States Attorney