ERIC V. KERSTEN, CA Bar #226429
Attorney at Law
1125 T Street
Fresno, CA  93721
Telephone: (559) 326-6258
eric@kerstenlegal.com**Error! Bookmark not defined.**

Attorney for Defendant
Daniel Vincent Salazar, Jr.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 1:20-cr-00025-JLT |
|---|---|
| *Plaintiff*, | DEFENDANT'S SENTENCING MEMORANDUM; LETTERS OF REFERENCE |
| vs. | |
| DANIEL VINCENT SALAZAR, Jr., | DATE: March 10, 2025<br>TIME: 9:00 a.m. |
| *Defendant* | JUDGE: Hon. Jennifer L. Thurston |

    Mr. Salazar is deeply remorseful for the harm he has caused. He realizes the severity of his offenses and is ashamed of his conduct. Mr. Salazar understands the pain he inflicted on his victims and deeply regrets the suffering he has caused. He apologizes sincerely to those he harmed.

    The parties have agreed to recommend that Daniel Salazar be sentenced to a custodial term of 180-to-540 months (15-to-45 years), followed by a term of supervised release in the range of 180-months to life. Giving due consideration to the sentencing factors set forth at 18 U.S.C. § 3553(a), Daniel Salazar respectfully requests this Court impose a sentence of 240 months in custody followed by a 240-month term of supervised release.

**I. Legal Standard**

    In fashioning an individualized sentence that appropriately accounts for the unique facts of this case and this defendant, the court is governed by 18 U.S.C. §3553. The overriding

mandate of §3553 is that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in subparagraph (a)(2). The four purposes of sentencing are "retribution, deterrence, incapacitation, and rehabilitation." *Tapia v. United States*, 131 S. Ct. 2382, 2387 (2011). Given the individual facts of a particular case, the four purposes of sentencing will not be equally relevant, and they should only be considered "to the extent that they are applicable in a given case." *Id*. at 2387. Here, at least five mitigating factors support the requested sentence. They include Mr. Salazar's immediate acceptance of responsibility and apology to his victims upon arrest; his criminal history score of zero; an extremely difficult childhood; his relative youth at the time of the offense; and his strong family support.

**1. Daniel Salazar Immediately Accepted Responsibility for His Actions**

The Stanislaus County Sheriff's Department (SCSD) first learned of Daniel Salazar's misconduct in April of 2019, but he was not arrested until January 17, 2020. PSR, ¶¶7,18. Daniel was arrested when SCSD and Federal Bureau of Investigation (FBI) agents executed a search warrant at his residence. Upon arrest Daniel made a full confession. He admitted that he had been contacting minor females from his Snapchat and Instagram accounts to exploit and obtain images and videos of the victims; he admitted that knew the ages of the minor females; and he described how he located and contacted the minors. PSR, ¶18. Daniel also admitted that he continued contacting the minor females because after he started, he "got really addicted to doing it." PSR, ¶19. Daniel never met the minors in person, he only contacted them over social media.

When Daniel was arrested he also wrote a letter of apology to his victims, telling them "I am deeply sorry to all those I hurt and exploited," that "I would not have liked it if someone was doing that to my daughter if I had one," and that "It was a really messed up choice I did." PSR, ¶19.

While Mr. Salazar's post arrest conduct does not reduce his culpability, it is laudable that upon being arrested Daniel's immediate reaction was to accept full responsibility for his conduct and apologize to his victims.

### 2. Daniel Salazar was Relatively Young When Committing His Crimes.

Daniel's misconduct began in December 2018, when he was 22 years old. PSR, ¶7. He was arrested approximately 13 months later, in January 2020. While Daniel was certainly old enough to know better, it is well accepted that the prefrontal cortex is not fully developed before about age 25. In *Gallegos v. Shinn*, D. Arizona, February 20, 2020, WL 836600, Dr. Davis Fassler, a child and adolescent psychiatrist, explained that the region of the brain "responsible for instinctual behavior, such as aggression, anger, pleasure and fear," develops first, while the frontal cortex, the region "responsible for planning, strategizing, and judgment," develops last and continues to mature into the mid-20s. Before the frontal cortex is fully developed, "young adults [are] more likely to act on instinct or impulse," and it is "harder for them to modulate emotional responses, regulate behavior, control impulses, assess risks or fully consider the consequences of their actions." *Id*.

While Daniel knew his actions were wrong, his statement that he "really got addicted to doing it" indicates his misconduct may have been influenced by a difficulty in regulating his behavior, controlling his impulses, or considering the consequences of his actions.

### 3. Daniel Salazar's Criminal History Score is Zero

Daniel's prior criminal history consists of a single juvenile adjudication for activity that occurred more than nine years ago, in February 2012. PSR, ¶76. While the PSR states the matter is too old to score, because Daniel received straight probation with no term of incarceration no criminal history points would be assessed regardless of the age of the adjudication. See USSG 4A1.2(d). Daniel successfully completed that term of juvenile probation with no violations. PSR, ¶76. He has no criminal history points and his criminal history score is zero.

### 4. Daniel Salazar Experienced an Extremely Difficult Childhood.

During the pre-sentence interview Daniel downplayed the difficult nature of his childhood, but several heartfelt letters from family members make clear the difficult challenges Daniel faced during his formative years. (Letters attached as Exhibit A (1-7)).

The letters are quoted at length below. They show that Daniel's mother was an 18-year-old single parent who was abandoned by Daniel's abusive biological father, who was entirely

3

absent from Daniel's life. Daniel's stepfather, Tony Herrera, entered Daniel's life when he was 4 years old and served as a father figure, but Tony abused drugs and spent several years in and out of prison. The family visited Tony every weekend when he was incarcerated, but this affected Daniel severely. In 2010, when Daniel was 14 years old, his stepfather died in a tragic accident at home while hurrying to pick up Daniel from a dental appointment. Daniel unfairly blamed himself for his stepfather's death and the loss was devastating to Daniel, and to the whole family.

Daniel's mother could not handle the loss and struggled with depression and drug abuse. The family fell into hard times and moved frequently. Daniel, as the eldest child, took on responsibilities beyond his years. He stepped up at an early age to take care of his siblings as best he could, but it was difficult. Daniel's grandfather also passed away around that time and his death further compounded Daniel's sense of loss and lack of guidance. While Daniel's grandfather also suffered from abuse, he was Daniel's football coach and a positive presence in Daniel's life.

As a family crumbled and their mother abused drugs to cope, the children often went days without seeing her. Strange people came in and out of their home and the children frequently missed school. When they did attend, they often lacked clean clothes. Out of financial necessity, the family lived in poor neighborhoods with high crime rates and gangs. Daniel lost family and friends to death, and started hanging out with the wrong crowd. In 2013 he tragically witnessed the death of one of his closest friends, a traumatic event that took an immense toll.

Prior to these deaths Daniel was a role model to the family. He was involved many sports and school activities, and loved by coaches, teachers and parents. After, he frequently changed high schools and eventually dropped out to work.

**5. Family Support**

Daniel's family stands by him and is committed to providing a strong support system as he works to make amends. They understand the harm Daniel has caused and make no effort to minimize it. They write to provide insight regarding Daniel's nature, character and life experiences. They want the court to know that Daniel is deeply remorseful and committed to taking responsibility for his actions.

Dolores Gonzalez is Daniel Salazar's mother. She writes to share that:

> I understand that his choices have caused harm and deeply impacted the victims and their families. I acknowledge the need for justice, but I am also asking for your mercy as Daniel has shown deep remorse and is committed to taking responsibility for his mistakes.
>
> Daniel has endured significant hardships throughout his life. As a young mother, I faced many challenges, including instability, addiction, and abuse. Despite my best efforts, these struggles inevitably affected Daniel. When my late husband became part of our lives, he served as a father figure to Daniel, and for a time, our family experienced stability. Daniel thrived in school and extracurricular activities, supported by my husband and my stepfather. However, our lives were upended in 2010 when my husband tragically passed away in an accident.
>
> This loss was devastating for Daniel, who unfairly blamed himself for my husband's death. Our family fell into hard times once again. I struggled with depression and addiction, and Daniel, as the eldest child, took on responsibilities beyond his years, often acting as a father figure to his siblings. Without adequate support or counseling, Daniel internalized his pain, and as he grew older, he fell in with the wrong crowd, leading to poor decisions and ultimately his current situation.
>
> I firmly believe that Daniel is not beyond redemption. With proper psychological and emotional rehabilitation, he can overcome the childhood trauma and the destructive patterns that have shaped his life.
>
> As a mother, it breaks my heart to see him in this position, but I know he has the strength to turn his life around. Today, Daniel has a son who will be turning 9 years old on February 6. His absence weighs heavily on our family and, most of all, on his son. As a family, we are committed to ensuring that this generational cycle of hardship ends with Daniel. We want to give his son a future filled with stability, love, and the positive presence of a father who has learned from his mistakes and grown stronger because of them. With a strong support system of family and friends, we are committed to standing by him as he works to make amends. Daniel has expressed deep remorse for the harm he has caused, and he is determined to repay his debt to society and the victims he has impacted.
>
> He is a kind and caring individual at his core, capable of learning from his mistakes and becoming a positive force in the lives of others.
>
> I fully understand the need for accountability and justice. At the same time, I respectfully ask that you consider Daniel's potential for change and grant him the opportunity to rehabilitate himself. I am confident he can learn from his mistakes, contribute positively to society, and make amends for the harm caused.

(Letter of Dolores T. Gonzalez, attached as exhibit A-1.)

Armando R. Gonzalez is Daniel Salazar's current stepfather. He "understand[s] the gravity of [Daniel's] crimes involving harm to minors and acknowledge[s] the deep and lasting impact of [Daniel's] actions." Armando writes "not to excuse [Daniel's] behavior, but to offer insight into his character, express [his] belief in [Daniel's] capacity for change, and humbly request that he be given an opportunity for redemption and rehabilitation." Armando states:

> I have known Daniel for over seven years, beginning when I started a relationship with his mother, Dolores, whom I am now married to. During this time, I have come to know him as a sensitive, kind-hearted individual who struggles with expressing his emotions and understanding his own worth. Despite his personal challenges, he possesses a quick sense of humor and had impressive athletic talent as a young man.
>
> However, Daniel's life has been shaped by significant hardships. His mother became a single parent at 18, and his biological father was absent due to abusive behavior. Throughout his childhood, Daniel assumed a protective role for his younger siblings while being exposed to environments marked by addiction, instability, and harmful influences. His first stepfather, Tony, who served time in and out of prison due to a struggle with addiction, was a central figure in Daniel's life until his tragic accidental death when Daniel was 14. The loss of his grandfather, Jerry, who also battled addiction and incarceration, further compounded Daniel's sense of loss and lack of guidance during formative years. These generational struggles and absence of healthy role models left Daniel without the tools to navigate adulthood and fatherhood responsibly.
>
> I have spoken at length with Daniel about his actions, and he has shared his profound shame, remorse, and sorrow for the harm he caused to the victims, his own son, his mother, and the entire family. He has tearfully expressed his anger at himself as well as his willingness to accept full responsibility for his crimes. He understands the seriousness of his actions and the need for accountability. He also recognizes the profound impact on the victims and has reflected deeply on how his choices violated their safety and trust.
> While I know that justice must be served, I also believe firmly in the possibility of personal transformation. Having experienced my own struggles with generational dysfunction, harmful beliefs, and incarceration I have come to understand how change is possible when one is given access to the right tools, support, and rehabilitative opportunities. I believe Daniel has the potential to become a better man and contribute positively to society if given the chance to confront and address the root causes that led to his harmful behavior.

> As a family, we are committed to supporting Daniel through every step of his journey toward accountability and growth. We will provide him with the emotional, Spiritual, and practical support necessary to help him become a responsible and rehabilitated individual. It is my sincere hope that he will be granted the opportunity to demonstrate his remorse through a meaningful path of change and healing, including a sentence closest to the minimum allowed that will provide for him to be able to exemplify his change upon release. I pray that the letter of the law will be applied with restorative and redemptive justice in mind and at heart. I humbly pray for grace and for mercy.

(Letter of Armando Gonzalez, attached as exhibit A-2.)

Sadie Herrera is Daniel's half-sister. She notes that Daniel's biological father was never involved in his life, and that Daniel was "broken-hearted at an early age due to his biological father's absence." Sadie and Daniel's mother married Tony Herrera, when Daniel was four years old. Tony then raised Daniel like a son, but he was in and out of prison. The family visited Tony every week at the prison and this affected Daniel severely. Tony was in prison for multiple years and returned home around 2008. Tragedy struck in 2010 when Tony died in a freak accident while trying to retrieve keys he had locked inside their house. Tony needed his car keys to pick Daniel up from a dental appointment and severed an artery while breaking a window to get back into the house. Sadie believes Danie felt responsible for their father's death because hurrying to retrieve the keys to pick up Daniel. After Tony's death Sadie states the family crumbled:

> We had to move due to our mother's depression and not wanting to be in the home where our father had passed away at. My mother moved to San Jose California where so we would be around more family and friends. Daniel was only 14 years old, I was 9 years old, Tony (brother) was 8 years old, and Eliasz (brother) was 5 years old. Our mother was going through so much due to the loss of our father she started doing drugs the first year after our father passing. We would not see her sometimes for days, people in and out of our home, we would not go to school and if we did, we would have no clothes or smell. Daniel Salazar had to be the grown-up and step up at an early age, he would take care of us and do his best at only 14 years old. With San Jose's high rate of crime and gangs Daniel started to lose more friends and family due to death and started to hang around the wrong group of friends. My Brothers and I have been through a lot of childhood trauma as kids.
>
> Before our father passed away Daniel was a role model to our family and friends. He was involved in every sport and school activity even

7

> the spelling bee at his home school. Daniel was a good outgoing kid and a loving big brother. He was always protective of us. All the coaches, teachers and parents loved Daniel. I am not trying to justify his actions or make it ok but since being arrested Daniel has spoken about how remorseful he is and how he takes accountability for his actions. He understands the consequences of his actions and the impact he had on others and he truly feels terrible about what he did. Daniel has done a lot of thinking while serving the past 5 years and he does not need more prison time. He needs therapy and his family. Daniel has an 8-year-old son that needs him home and asks every day for him to come home. Please have mercy and sentence Daniel to the least amount of time possible.

(Letter of Sadie Herrera, attached as exhibit A-3.)

Eli Herrera is Daniel's youngest brother. He knows Daniel has made mistakes, but writes to offer insight regarding:

> the person [Daniel] truly is—a devoted brother, father, and protector who has faced extraordinary hardships and yet still strives to care for those he loves.
>
> Daniel has always been my biggest supporter and role model. Growing up, he never missed my basketball or football games, no matter what was going on in his life. He played with me every day to help me improve and made me feel like I mattered. He protected me from bullies, cared for me like a father figure, and always included me in everything, even in small gestures like taking me to the store or asking if I needed anything.
>
> Daniel's life has been filled with challenges that no child or young man should have to endure. His biological father was absent, leaving him heartbroken at a young age. Our father Tony Herrera, stepped into his life, Daniel finally found a father figure. Unfortunately, our family faced instability due to our father's repeated incarceration. Every weekend, Daniel and the rest of us would visit our dad in prison, which left a lasting emotional scar on him.
>
> The darkest chapter of our lives came in 2010 when our father tragically passed away in a freak accident at home while rushing to pick Daniel up from a dental appointment. Daniel was only 14 years old, and he has carried immense guilt ever since. Our family was shattered by this loss. Our mother fell into deep depression, and we were forced to move to San Jose for a fresh start. At just 14, Daniel had to take on responsibilities beyond his years, stepping up as the adult in our family to take care of us while grieving and struggling himself.

8

> In San Jose, Daniel was exposed to an environment of violence and loss. He lost friends and loved ones to gang violence and made poor choices while trying to cope. Despite this, Daniel is not defined by his mistakes. He is a kind, compassionate, and loving person, especially to his young son.
>
> Daniel's son misses him deeply. He talks about his father often and longs for the day they can be reunited. Daniel's absence has been hard on his son, and I know that Daniel feels the weight of not being able to be there for him as a father. He wants nothing more than to return to his family, be a positive role model for his son, and make amends for his past.
>
> Judge Thurston, I respectfully ask for your compassion in considering a reduced sentence for Daniel. A long sentence would take him further away from his family, especially his young son, who needs him now more than ever. I believe Daniel has the potential to rehabilitate and live a productive, law-abiding life. He is not beyond redemption, and with the chance to return to his family sooner, he can prove that he is capable of change.
>
> Thank you for taking the time to read this letter and for considering my heartfelt plea. I trust in your wisdom and fairness in making this decision.

(Letter of Eliasz Herrera, attached as exhibit A-4.)

Daniel's cousin, Sonia Valenzuela, asks the court to consider that Daniel is a good person "and not focus only on the mistakes he has made." She understands that Daniel has "made huge mistakes and caused pain through his actions." She offers that:

> Over the past 5 years my cousin has been incarcerated, he has been remorseful and regretful of the actions and hurt he has caused others. While there is no excuse for his actions I know Daniel deeply regrets it and wishes he could take it back. I have been close to my cousin Daniel all my life. We grew up together, went to school together, lived together and through all my years of knowing my cousin he has done nothing but make me laugh and bring me happiness. Daniel is a loving person who made a huge mistake and learned from it. He will never do anything like this because he has learned that it has caused so many people hurt and Daniel is not the type of person to bring this pain to others.
>
> Daniel has not lived the best life as I have been a witness to it. His biological father was never in his life. The father figure he had was my Uncle Tony who passed away from a freak accident when Daniel was just a kid. After that his mom, my Aunt Dolores, was in such pain and

9

> depression that she turned to drugs to cope with the loss of her husband and being a single mother taking care of 4 kids by herself. Daniel had to grow up at a young age to take care of his siblings and try to be that father figure in their life. Daniel has not been in trouble all his life and he was always a good kid who went to school and got jobs to support himself and his family.
>
> Daniel has a young son who is now 8 years old who looks just like him when he was a kid. I am asking you to think of his child. I am asking for mercy please.
>
> We as a family will support him outside of prison and will be there for him to make sure he does good. Daniel wants to live a better life and to be the best man he can be for himself and his family. I am asking you Judge, from the bottom of my heart to please don't give my cousin Daniel a harsh punishment. Please give him the chance to show he is a changed person. I am certain he will never do anything like this or hurt anyone again.

(Letter of Sonia Valenzuela, attached as exhibit A-5.)

Tony Herrera **i**s Daniel Salazar's half-brother. He writes to offer support and shed light on the struggles Daniel has experienced. Tony states:

> I know [Daniel] stands before you as a person who has made serious mistakes, but I also believe he is truly remorseful for those mistakes and is ready to grow and make amends.
>
> Growing up, my brother faced generational trauma that deeply affected his mental and emotional health. He was raised in an environment filled with hardships, and on top of that, in 2013, he tragically witnessed the death of one of his closest friends. This traumatic event put an immense toll on him, and I can attest that the emotional pain he endured during that time was beyond what anyone should have to bear.
>
> Witnessing such a loss, especially of someone so close, caused my brother to experience a range of emotional and psychological reactions, including shock, disbelief, and intense grief. He was constantly on edge, struggling with feelings of sadness, anger, and confusion. The impact of such an event can be devastating, leading to feelings of guilt and a deep sense of loss. My brother did not have the resources or support to properly process his grief, and this emotional overload severely impacted his ability to make sound decisions. While it is no excuse, I believe the choices my brother made were heavily influenced by emotional pain, trauma, and an underdeveloped ability to process and evaluate decisions properly.
>
> I understand that there must be consequences for my brother's actions.

> However, I firmly believe that my brother deserves the opportunity to grow, to heal from his past, and to have a future beyond the mistakes he made. He has shown significant growth since being arrested and has demonstrated a willingness to change. He has the support of our entire family, and we are committed to helping him rebuild his life. We believe that with the right support, guidance, and an opportunity for redemption, he will continue to mature and make positive contributions to society.
>
> I respectfully ask that you consider my brother's difficult background, the trauma he has faced, and his potential for change when making your decision. I believe that he can learn and grow from his past, and that a second chance would allow him to build a better future for himself and contribute to society in a meaningful way.
>
> Thank you for taking the time to consider my letter. I sincerely hope that you will give my brother the opportunity to continue his healing journey and have a future beyond his past mistakes.

(Letter of Tony Valenzuela, attached as exhibit A-6.)

Dolores Dominguez is Daniel's grandmother. She shares that Daniel "has been incarcerated for years now and [she] know[s] in [her] heart that he has learned the consequences for his actions and how he has destroyed the life of his victims and their families and also how he has destroyed his own and our family." She notes that while Daniel experienced a very difficult childhood, "nothing is an excuse for his actions." Dolores asks for "mercy and forgiveness" for Daniel because this is the first time he has gotten into "this kind of trouble and he has expressed his remorse for his actions." Dolores also shares that Daniel worked productively with her at the company 100 percent Purity, and that he had just started a new job with the Pepsi company in Modesto when he was arrested. She is confident that Daniel will find a job when he is released and "will work hard and be able to spend time with his son." (See letter of Dolores Dominguez, attached as exhibit A-7.)

## II. Argument

### A. A 240-Month Term of Incarceration Followed by 240 Months of Supervised Release Satisfies the Penological Objectives Established by Congress.

The overriding mandate of 18 U.S.C. §3553 is that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing,

11

and the four purposes of sentencing are "retribution, deterrence, incapacitation, and rehabilitation." *Tapia v. United States*, 131 S. Ct. 2382, 2387 (2011). Given the individual facts of a particular case, the four purposes of sentencing will not be equally relevant, and they should only be considered "to the extent that they are applicable in a given case." *Id*. at 2387.

"A court's duty is always to sentence the defendant as he stands before the court on the day of sentencing." *Pepper v. United States*, 131 S. Ct. 1229, 1242 (2011). Here, upon being arrested, Daniel immediately admitted his misconduct, he accepted full responsibility for his actions, and wrote a letter of apology to his victims. After never having been incarcerated, Daniel has already served more than five years in custody. He is a far different person than he was at the time of his offenses. He is ashamed of his conduct, and he is deeply remorseful for the pain he inflicted on the victims. When reviewing the victim statements with counsel Daniel was visibly disturbed as he knows he is responsible for their suffering.

The requested 240-month custodial term followed by a 240-month term of supervised release is extremely punitive. It clearly meets the need for retribution. It also protects the safety of the community. Mr. Salazar was 23 years old when he was arrested. Even assuming he earns the maximum 15 percent good time while at BOP, he will be in his 40s upon completion of his custodial term. Due to the nature of his Mr. Salazar's offenses he is ineligible for any additional time reduction under the First Step Act. Further, even after completing his custodial sentence, Mr. Salazar will not truly be free. Significant restrictions on his liberty will continue to exist as he will be subject to numerous conditions of supervised release for decades at least.

Research shows that increasing the severity of punishment does little to deter crime. See, e.g., U.S. Department of Justice, National Institute of Justice, Five Things About Deterrence (May 2016) (concluding that "[l]aws and policies designed to deter crime by focusing mainly on increasing the severity of punishment are ineffective" because "[i]ncreasing the severity of punishment does little to deter crime.") Regardless of whether the court accepts Mr. Salazar's request for a 20-year term, or follows the government's request for an even longer term, Mr. Salazar will have served *decades* in custody before he completes his sentence of incarceration. And his liberty will be substantially restricted for additional decades while on supervised release.

Daniel was 23 years old when arrested and will be in his forties, at the very least, when released from custody. Regardless of the sentence this court chooses to impose, it is clear Daniel Salazar will be severely punished for his crimes. It also appears clear that whether the court imposes a term of 20, or 30, or 40 years, it will make no meaningful difference in terms of deterrence.

### III. Conclusion

Mr. Salazar committed serious offenses and he accepts that he must be punished severely for his actions. A 240-month term of incarceration followed by a 240-month term of supervised release is indeed serious punishment. Particularly given that Daniel immediately accepted full responsibility and has never previously been incarcerated. He respectfully requests that a 240-month term be imposed.

Respectfully submitted,

DATED: March 5, 2025              /s/ *Eric V. Kersten*
                                  ERIC V. KERSTEN
                                  Attorney for Defendant
                                  Daniel Vincent Salazar, Jr.